524 F.Supp. 351 (1981)
QUICK ERECTORS, INC., Plaintiff,
v.
SEATTLE BRONZE CORPORATION, the Seagrave Corporation, and Samson Industries, Inc., Defendant.
No. 79-1385C(3).
United States District Court, E. D. Missouri, E. D.
June 30, 1981.
*352 James F. Hespen, St. Louis, Mo., for plaintiff.
Shepherd, Sandberg & Phoenix, John S. Sandberg, Kathryn Kottemann, St. Louis, Mo., for defendant.

MEMORANDUM
FILIPPINE, District Judge.
This matter is before the Court on plaintiff's motion to remand and defendants' motions to dismiss. Both motions have been fully briefed, and oral argument has been heard.
Plaintiff, Quick Erectors, Inc., brought suit in the Circuit Court of the County of St. Louis against defendants Seattle Bronze Corporation and the Seagrave Corporation d/b/a Samson Window Corporation[1] for *353 breach of contract. Plaintiff alleges that it has never received $27,011.64 of the $204,138.25 due and owing plaintiff for work performed under a construction contract. Defendants, Seattle Bronze and Seagrave, removed this case from the state court, basing jurisdiction in this Court upon diversity of citizenship.

I. Motion to Remand
The issue raised by plaintiff's motion to remand is whether defendants' petition for removal was timely. Plaintiff's petition which commenced this action in state court was served upon Seagrave on October 1, 1979 and upon Seattle Bronze on October 16, 1979. An affidavit of James Hespen, counsel for Quick Erectors, indicates that Seattle Bronze may have had a copy of the petition one day prior to service on October 15. Both defendants joined in a petition for removal on November 15, 1979.
28 U.S.C. § 1446(b) specifies that "[t]he petition for removal of a civil action or proceeding shall be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter."
Plaintiff contends that the petition was not timely because it was filed 31 days after Seattle Bronze first received a copy of the pleading on October 15 and 45 days after Seagrave received its copy through service on October 1. It would appear that whether Seattle Bronze first received its copy of the initial pleading on October 15, as alleged by plaintiff, or on October 16, when officially served, would determine whether Seattle Bronze had filed a timely petition for removal because § 1446(b) speaks of receipt of the pleading "by service or otherwise." However, the Court concludes on the basis of the reasoning in Potter v. McCauley, 186 F.Supp. 146 (D.Md. 1960) that whether Seattle Bronze had a copy of the pleading on the day before it was duly served is irrelevant.
In McCauley, defendant had voluntarily accepted the complaint. The court held that voluntary acceptance of a complaint without service of process does not begin the running of the statutory period despite the language in § 1446(b) "through service or otherwise." The court, in analyzing this phrase, reasoned that because receipt of a complaint is not always contemporaneous with service of process, a defendant may not receive the complaint until after the summons and that a defendant should not have to decide whether to petition for removal before he knows from the complaint what the suit is about. Therefore, the court concluded that the intent of Congress in using this phrase was to give the defendant the full statutory period dating from receipt of a complaint filed after service of process, in other words to enlarge rather than decrease the time allowed in which to file for removal. Under McCauley's reasoning, although the defendant has a copy of the complaint before service of process, he always has 30 days from the date of service to file for removal.
Commentators have regarded McCauley favorably. See 14 Wright, Miller and Cooper, Federal Practice and Procedure § 3732 at 724-25. Other cases have interpreted "through service or otherwise" similarly. Where the Puerto Rican rule for service of process provided for substituted service with documents mailed "forthwith", the court held that mailing the complaint before substituted service did not commence the running of the 30 day period. Gibbs v. Paley, 354 F.Supp. 270 (D.P.R.1973). Likewise, where attempted service was null and void, the court declared that the statutory period did not begin to run from the receipt of the complaint. Moore v. Firedoor Corp. of America, 250 F.Supp. 683 (D.Md.1966). "[S]ection 1446(b), properly construed, requires service of process or substituted service under some appropriate rule or statute before the twenty (now thirty) day period starts to run." Id. at 685. The only authority that no summons need be served is a case involving entry of judgment by confession *354 where state procedural rules did not require original process. International Equity Corp. v. Pepper & Tanner, Inc., 323 F.Supp. 1107 (E.D.Pa.1970). None of the cases usually cited for the proposition that the thirty-day period commences from the actual receipt by defendant of the initial pleading involve receipt of the complaint before service of process. Ardison v. Villa, 248 F.2d 226 (10th Cir. 1957) (when summons is served without complaint, statutory period does not begin to run from date of summons); Barr v. Hunter, 209 F.Supp. 476 (W.D.Mo.1962) (time to file petition for removal dates from receipt of pleading, not from filing of return); Potter v. Khan, 108 F.Supp. 593 (S.D.N.Y.1952) (thirty-day period commences with receipt of complaint by mail, not from later date when service by publication complete where both methods of notice ordered by court). It follows from the above cases that the running of the thirty-day period commenced on October 16 when Seattle Bronze was served with process. Therefore, the petition for removal filed by Seattle Bronze was timely.
It is clear that The Seagrave Corporation, which received a copy of the initial pleading through service on October 1, 1979 and which joined in the removal petition on November 15, 1979 exceeded the statutory period for filing for removal. The general rule is that all properly joined defendants, other than purely nominal or formal parties, over whom the court has acquired jurisdiction must join in the petition for removal. 14 Wright, Miller and Cooper § 3731 at 718-19. And each must file for removal within thirty days from the date on which that particular defendant was served. If the defendant who was served first fails to remove within thirty days, a subsequently served defendant may not remove even with the first defendant's consent. Friedrich v. Whittaker Corp., 467 F.Supp. 1012 (S.D.Tex.1979); Perrin v. Walker, 385 F.Supp. 945 (E.D.Ill.1974); Transport Indemnity Co. v. Financial Trust Co., 339 F.Supp. 405 (C.D.Cal.1972); Crocker v. A. B. Chance Co., 270 F.Supp. 618 (S.D.Fla.1967); Fugard v. Thierry, 265 F.Supp. 743 (N.D.Ill.1967). Therefore, unless Seagrave is an improperly joined party, its failure to petition for removal in a timely fashion necessitates a remand.
Whether Seagrave is a proper party defendant is a determination for the Court. The district court, without a jury, decides all issues of fact raised by a motion to remand, and the removing party bears the burden of proof. 14 Wright, Miller and Cooper § 3739 at 760-61. Seattle Bronze, the removing party, argues that Seagrave is an improper party. In an affidavit submitted by Alvin Kirshner, the president of Seattle Bronze, Kirshner states that the Seagrave Corporation had no connection with the contract involved in this action, that "[n]either it, nor its agents, entered into or performed the contract and [that] it assumes no rights or liabilities of said contract." Whereas plaintiff sued Seagrave d/b/a Samson Window Corporation, he asserts that Samson Window Corporation, succeeded by Samson Industries, "was and is a distinct and separate legal entity from Seattle Bronze Corporation and Seagrave Corporation."[2] Plaintiff has not filed any counter-affidavit in response to this assertion.
The rule for deciding a removal petition as laid down in Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921) is as follows: If a plaintiff takes issue with the statements in a removal petition, "the issues so arising must be heard and determined by the District Court (cites omitted) .... But if the plaintiff does not take issue with what is stated in the petition, he must be taken as assenting to its truth and the petitioning defendant need not produce any proof to sustain it." Id. at 97-98, 42 S.Ct. at 37. The Eighth Circuit has followed Wilson. Farmers' Bank & Trust Co. v. Atchison, T.&S.F. Ry., 25 F.2d 23 (8th Cir. 1928).
*355 In the instant case, the statements are in an affidavit rather than in the removal petition, but this distinction does not appear relevant. A sworn statement is the equivalent of a verified petition. The pertinent point is that the plaintiff has failed to take issue with the contents. Moreover, the Court entertained oral argument and gave plaintiff an opportunity to show that Seagrave was more than a nominal party. The only evidence to which plaintiff's attorney could point was that on the purchase order form containing the agreement to which plaintiff was a party, Seattle Bronze was listed as a subsidiary of Seagrave. It appears to the Court at this time from Alvin Kirshner's affidavit and plaintiff's lack of counter-evidence, that Seagrave had no relation to this contract and that plaintiff joined Seagrave only in order to insure that all potential parties were named as defendants.
In a case of confused identity, a conductor was joined as a defendant in a negligence action when he was mistaken for the engineer. Because there was no valid claim against him, the court held that he was an improper party and that removal was, therefore, proper despite his failure to join in the removal petition. Williams v. Atlantic Coast Line RR, 294 F.Supp. 815 (S.D.Ga. 1968); accord, Derry v. Roadway Express, Inc., 248 F.Supp. 843 (E.D.Ky.1965). Similarly, it would seem that Seagrave may be disregarded and Seattle Bronze's petition held timely. Accordingly, plaintiff's motion to remand will be denied.

II. Motions to Dismiss
In May of 1975, Quick Erectors contracted with Seattle Bronze to furnish materials and erect steel on the Social Security Administration Building in Chicago. The contract stated that the items were necessary for "our contract to perform certain work on the Social Security Adm. Bldg." Alvin Kirshner, vice-president of Seattle Bronze, has testified by affidavit that Seattle Bronze was the agent for Samson Window Corporation although this fact was undisclosed at the time of contracting. After plaintiff, Quick Erectors, had partially performed, it was told to complete the work for the Samson Window Corp. Plaintiff substantially performed by June, 1976. Plaintiff alleges that it never received $27,011.64 of the $204,138.25 revised contract price.
Defendants have moved to dismiss this action because paragraph 13 of the contract specified that any action in connection with the contract was to be brought exclusively in the Supreme Court of New York County. In the alternative, defendants seek a transfer of this case to the Southern District of New York. Plaintiff objects that paragraph 13 is void because it represents an attempt to oust the jurisdiction of state and federal courts of competent jurisdiction.
The portion of paragraph 13 which is at issue is a forum selection clause. While forum selection clauses were once regarded with hostility, the modern trend is to enforce such clauses where, considering all of the circumstances, it is not unfair or unreasonable to do so. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) (admiralty); In re Firemen's Fund Ins. Co., 588 F.2d 93 (5th Cir. 1979); Dick Proctor Imports, Inc. v. Sumitomo Corp. of America, 486 F.Supp. 815 (E.D.Mo.1980); Public Water Supply Dist. No. 1 v. American Insurance Co., 471 F.Supp. 1071 (W.D.Mo.1979); Jack Winter, Inc. v. Koratron, 326 F.Supp. 121 (N.D.Cal. 1971); Restatement Second of Conflicts § 80. The cases cited by plaintiff to show that such a clause is void are old cases which preceded the modern trend to uphold these clauses. The courts in the cases cited supra have realized that they are not being divested of their jurisdiction by a forum selection clause but that they are merely declining to exercise their jurisdiction in accordance with the wishes of the parties as expressed in the forum selection clause. This Court hereby joins the modern trend by recognizing, as a general rule, the validity of forum selection clauses.
While the general rule is to uphold freely negotiated forum selection clauses, such clauses are not to be enforced if enforcement would be unreasonable and unjust, *356 if the clause is invalid because of fraud or overreaching, or "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." M/S Bremen, supra at 15, 92 S.Ct. at 1916. The burden of persuasion is upon the party resisting enforcement to demonstrate the existence of one of these exceptions. M/S Bremen, supra; Dick Proctor, supra; Spatz v. Nascone, 364 F.Supp. 967 (W.D.Pa.1973).
Plaintiff argues that the clause is invalid for fraud or overreaching because (1) Seattle Bronze could not have been sued in New York at the time the contract was executed because it did not qualify to do business there until April, 1977; (2) Seattle Bronze misrepresented in its contract with plaintiff that Seattle Bronze had the contract for the Social Security Administration Building and failed to disclose its agency for Samson; and (3) paragraph 13, buried in fine print, was a trap for the unwary. These arguments may be readily disposed of.
(1) While a corporation which is not licensed to do business in New York may be prevented from bringing suit in New York, it may still be sued there if it is "doing business" in New York or if the cause of action arose from the transaction of business in New York. N.Y.Civ.Prac.Law §§ 301, 302(a)(1) (McKinney); Traub v. Robertson-American Corp., 82 Misc.2d 222, 368 N.Y.S.2d 958, 961 (1975); Public Administrator v. Royal Bank of Canada, 19 N.Y.2d 127, 278 N.Y.S.2d 378, 380, 224 N.E.2d 877 (1967). While Seattle Bronze was not licensed to do business in New York, it did, according to Alvin Kirshner's affidavit, have "offices in Woodside, Nassau County of Queens New York at the time of making the contract with Quick Erectors, Inc. and it was this office that negotiated [the contract]." It appears, therefore, that Seattle Bronze would have been subject to suit in New York at the time the contract was made, and it certainly has been subject to suit there since its licensing in April, 1977.
(2) Failure to mention that one is acting for a principal does not amount to fraud unless the agent has notice that the party with whom the agent is contracting would not contract with the undisclosed principal. Restatement Second of Agency § 304, comment a. A nonfraudulently undisclosed principal may enforce a contract. Sonnenfeld Millinery Co. UHRI, 83 S.W.2d 168 (Mo.App.1935); Restatement Second of Agency § 302. Although Clyde Quick, plaintiff's president, states in an affidavit that, had this agency been disclosed, plaintiff would not have entered into the contract, there is no suggestion that Seattle Bronze had notice of this situation.
(3) Although this was a form contract, it was not an adhesion contract. Plaintiff made changes in the fine print. Plaintiff should have been aware of paragraph 13, as plaintiff made changes in an adjacent paragraph, paragraph 12. Plaintiff's argument that paragraph 13, buried in the fine print, was a trap for the unwary is, therefore, not convincing.
Plaintiff's final argument is that the forum selection clause should not be enforced because enforcement would contravene a strong public policy of Missouri, the forum state. The argument, which is somewhat complex, proceeds as follows:
Paragraph 23 of the contract in question provides that "[a]ny action or proceeding on any claim arising out of or in connection with or under this Purchase Order or the breach thereof, including any claim for extra or additional compensation or otherwise, must be brought by the Vendor within one year from the date upon which Vendor last furnished material to or performed labor hereunder." Plaintiff completed its work in 1976. Therefore, according to the provision in paragraph 23, plaintiff's time to file suit expired sometime in 1977.
This one-year contractual limitation provision is shorter than the statute of limitations in either New York or Missouri. New York has a six-year statute of limitations which governs actions for breach of contract, N.Y.Civ.Prac. § 213 (McKinney's); Missouri has a five-year statute of limitations. Mo.Ann.Stat. § 516.120. (Vernon). New York allows parties to agree contractually *357 to a shorter limitation period than that prescribed by statute. N.Y.Civ.Prac. § 201 (McKinney's); Soviero Bros. Contracting Corp. v. City of New York, 286 A.D. 435, 142 N.Y.S.2d 508 (App.Div.1955), aff'd, 2 N.Y.2d 924, 161 N.Y.S.2d 888, 141 N.E.2d 918 (N.Y.1957); Driscoll v. Board of Education, 98 N.Y.S.2d 610 (Sup.Ct.1950). It is the legislatively declared policy of the state of Missouri that parties to a contract or agreement may not contractually shorten the limitation provided for by statute. Mo. Ann.Stat. § 431.030 (Vernon);[3]Asel v. Order of United Commercial Travelers of America, 355 Mo. 658, 197 S.W.2d 639 (1946); Lumbermen's Mutual Casualty Co. v. Norris Grain Co., 343 F.2d 670 (8th Cir. 1965).
Enforcing the forum selection clause and dismissing the case would result in plaintiff's having to sue in the Supreme Court of New York County, where plaintiff would almost surely be held time-barred by virtue of paragraph 23. This result would be contrary to a public policy of the state of Missouri, which has been declared by its legislature and enforced by its courts. The objective of this policy is the protection of Missouri citizens. Plaintiff is a Missouri citizen who entered into the contract and made preparations for performance of the contract in Missouri. Therefore, Missouri has an interest in having its public policy applied in this case.
Defendants argue that the plaintiffs should not be allowed to defeat the forum selection clause and thereby benefit by their "sloth in seeking relief." There has been no showing, however, that plaintiff was dilatory. Plaintiff filed suit well within the time permitted by statute in both Missouri and New York. Therefore, it does not seem that they can be accused of sloth for failing to comply with a contractual provision which permits a much shorter time and does so in contravention of the public policy of one of these states.
Because the forum state has decided as a matter of public policy that it would be unreasonable or unjust for one of its citizens to be prevented from having his day in court by virtue of a contractually shortened period of limitations, this Court, in this instance, finds that it should not enforce the forum selection clause. Plaintiff has prevailed in its argument that this case falls within the public policy exception to the general rule of enforceability of forum selection clauses which the Supreme Court carved out in M/S Bremen. Accordingly, defendants' motions to dismiss will be denied. Because defendants have not made the required showing for a transfer under 28 U.S.C. § 1404(a), see 15 Wright, Miller and Cooper §§ 3848-3851, the motion, in the alternative, to transfer this action to the Southern District of New York will also be denied.
NOTES
[1] Since removal, plaintiff has also joined as a defendant Samson Industries, Inc., the successor to Samson Window Corp.
[2] It was after receipt of this affidavit that Quick Erectors added a count against Samson Industries.
[3] "All parts of any contract or agreement here-after made or entered into which either directly or indirectly limit or tend to limit the time in which any suit or action may be instituted shall be null and void."